THOMAS B. WILBOR et al. *v.* THOMAS MATTESON.

SAME *v.* SAMUEL ARNOLD.

A mill owner, against whom action is instituted under the Flowage Act, if he have a right to flow the lands of the plaintiff, as an incident to the grant of his mill and mill privilege from the plaintiff or his predecessors in title, may maintain, in law as well as in equity, any defence which enures to him in consequence; and his bill in equity for relief, predicated upon an assumption to the contrary, will be dismissed.

THESE were suits in equity, differing only in unimportant respects, heard by the Court upon bills, answers and evidence.

In their respective answers, the defendants severally submitted, as a distinct point of defence, that all and every the matters in the plaintiff's bill mentioned and complained of were matters which might be tried and determined in the actions of law between the parties, the further prosecution of which it was the object of the bills to enjoin; and claimed to be allowed the same benefit of this defence as if they had demurred to said bills.

*B. F. Thurston, for complainant,* contended that, upon the facts in proof, he was entitled to the injunction prayed for, and insisted that only in a court of equity could the complainants avail themselves of the defence afforded by the said facts.

*T. C. Greene, for defendants,* controverted both propositions, and insisted, especially, upon the point taken in the defendants' answers above quoted, citing the 40th rule of Court Practice; and several authorities, among which were *Hathorn* v. *Stinson et al.* 10 Maine, 224, and *Oakley* v. *Stanley,* 5 Wendell, 523.

The opinion of the Court, in which the material facts are recited, was delivered by

DURFEE, J.   The defendants, at the February term, 1860, of the Court of Common Pleas, severally brought their actions against the complainants, under the statutes relating to water-mills, to recover damages for the flowage of their lands situate above the mill of the complainants, on a branch of the Pawtuxet river.   At the August term following, the complainants, being defendants in the actions at law, submitted to judgment and appealed to the Supreme Court.   They entered their appeals in the Supreme Court at the September term, 1860, and at the March term, 1861, submitted to judgment.   Since then the actions at law have been continued from term to term, to await the decision of these two suits in equity, which were commenced on the 12th and 13th of March, 1861, for the purpose of having the defendants enjoined from proceeding further at law.

In their bills the complainants allege, that the flowage, on account of which the defendants have sued them, was caused by putting flash-boards on the top of their dam after mowing-time in each year, and keeping them there until the middle of April of the year ensuing, agreeably to an immemorial practice of the mill.   In the bill against Matteson, they allege that Matteson acquired the land for the flowage of which he has sued them, in 1855, of Nelson Andrews, who himself acquired the same, in 1844, of William F. Potter.   They further allege that, prior to 1832, Potter was the owner not only of the land flowed, but also of a portion of the mill property and dam, by the use of which the land was flowed.   On March 13th, 1832, Potter conveyed,

by deed of warranty, to Benjamin W. Kimball, his part of the land connected with the mill, "together with all the privileges and appurtenances thereunto appertaining, consisting of flume-ways, water-ways, pond, dam and abutments, together with one-thirtieth part of the water power of said river which was set off to William F. Potter, in the partition of one-sixth part of the Old Washington Manufacturing Company's estate," to have and to hold the same with all the appurtenances, privileges and commodities to the same belonging or in any wise appertaining. On March 15th, 1832, Kimball conveyed this property to the complainants. The complainants also allege that, prior to 1832, the mill was operated by the Old Washington Manufacturing Company; that Potter was then a member of the company, being likewise the owner of the land for the flowage of which Matteson has brought his suit; that, during that time, the company, with the knowledge and participation of Potter, were accustomed to flow this land by the use of flash-boards, in the same manner and to the same extent as the complainants have since flowed it; and that, after 1832, while Potter retained the land, it continued to be flowed as before, without objection on his part. In the bill against Arnold, the complainants allege that Arnold acquired the land, for the flowage of which he has sued them, of Deborah and Lucy Johnson, October 30th, 1852; that, prior to April 19th, 1830, Deborah and Lucy Johnson being then owners of the land, were likewise owners in the mill, by the use of which it is flowed, and that, during such united ownership, the land was flowed by the use of flash-boards, in the same manner in which it was flowed by the complainants during the time for which Arnold has sued them for damages; that, on April 19th, 1830, Deborah and Lucy Johnson conveyed their estate in the mill and its privileges, by deed of warranty, to the parties from whom one of the complainants purchased the same, in 1831; and that, after this conveyance, until they sold the land to Arnold, in 1852, it continued to be flowed as it had previously been flowed, without objection on their part. Under these circumstances, the complainants contend, that under the conveyances of William F. Potter and of Deborah and Lucy Johnson, of

their estates in the mill and its privileges, the right to flow their lands above the mill as they were then accustomed to be flowed, passed as incident to the grant, and that the defendants, when they afterwards acquired these lands, acquired them subject to this right.

The defendants, while they deny many of these statements of the complainants, object that the defence which is founded upon them is a defence which might equally as well have been made to the actions at law, and that, therefore, the complainants are not entitled to the relief which they seek.

We think the objection is well taken.  The grants of William F. Potter and of Deborah and Lucy Johnson must be construed in the same way at law as in equity; and, accordingly, if the complainants, under those grants, have the right which they assert, to flow the lands of the defendants, they have the right, and may maintain any defence which enures to them in consequence, at law as well as in equity.  In this opinion we are confirmed by several of the cases which are cited by the complainants in proof of the right which they claim,—all the cases cited for that purpose being cases at law.  Thus, in *Hathorn* v. *Stinson*, which was a complaint under a statute of Maine similar to ours, the defendant was allowed to make such a defence as these complainants desire to make; and in *Oakley* v. *Stanley*, which was an action at law for flowing the plaintiff's land by the dam of a cotton factory, a defence of the same sort was sustained by the Supreme Court of New York.  In other cases that were cited, parties claiming such a right of flowage as the complainants claim, were sustained in suing at law, as plaintiffs, for the maintenance of the right; and if the right be cognizable at law as a ground of prosecution, it is certainly cognizable as a ground of defence.  The bills must therefore be dismissed.